# Post-Employment Restriction of 12 U.S.C. § 1812(e)

A Director of the Office of Thrift Supervision who resigns at the President's request is not subject to the two-year restriction, under 12 U.S.C. § 1812(e), against working for an insured depository institution or a depository institution holding company.

September 4, 2001

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF THE TREASURY
AND
THE CHIEF COUNSEL
OFFICE OF THRIFT SUPERVISION

You have asked for our opinion whether the Director of the Office of Thrift Supervision ("OTS"), Department of the Treasury, will be subject to a two-year restriction against working for an insured depository institution or a depository institution holding company, when her resignation, which she offered at the President's request, takes effect. 12 U.S.C. § 1812(e)(1)(A)(ii) (1994). *See* Letter for Daniel Koffsky, Acting Assistant Attorney General, Office of Legal Counsel, Department of Justice, from Carolyn J. Buck, Chief Counsel, Office of Thrift Supervision (July 24, 2001) ("July 24, 2001 Letter"). We believe that the two-year restriction would not apply.

The possible restriction arises from the OTS Director's position on the Board of Directors of the Federal Deposit Insurance Corporation ("FDIC"). That Board consists of three members appointed to the Board by the President, with the Senate's advice and consent; the Comptroller of the Currency; and the Director of OTS. 12 U.S.C. § 1812(a)(1). For two years after leaving the Board, former members are barred from "any office, position, or employment in any insured depository institution or any depository institution holding company"; but the bar does not apply "to any member who has ceased to serve on the Board . . . after serving the full term for which such member was appointed." *Id*. § 1812(e)(1)(A)-(B).

In a letter to the President, the Director of OTS stated that the President had asked her to resign and that she therefore was tendering her resignation, effective upon the confirmation and appointment of a successor. Letter for the President, from the Director of the Office of Thrift Supervision at 1 (July 3, 2001) ("July 3, 2001 Letter"). The issue here is whether, having resigned in these circumstances, the Director of OTS has "serv[ed] the full term for which [she] was appointed." 12 U.S.C. § 1812(e)(1)(B).

A similar issue arose in 1961, when the Comptroller of the Currency resigned at the request of President Kennedy. At that time, the General Counsel of the Treasury concluded that "resignation at the request of the President is equivalent

to removal" and that "service until removal by receipt of a requested resignation constitutes service for a full term of office as Comptroller of the Currency." Letter for Erle Cocke, Sr., Chairman, FDIC, from Robert M. Knight, General Counsel, Department of the Treasury at 1 (Nov. 7, 1961). Relying on these judgments, the Chairman of the FDIC, on the advice of his General Counsel, determined that the two-year post-employment restriction would not apply. *See* Letter for Robert M. Knight, General Counsel, Department of the Treasury, from Erle Cocke, Sr., Chairman, FDIC at 1 (Nov. 7, 1961).

According to a memorandum in the files of the Treasury Department, that Department's General Counsel showed Assistant Attorney General Nicholas Katzenbach, then the head of our Office, the letter from the Treasury General Counsel and a draft of the reply later sent by the FDIC Chairman, and Mr. Katzenbach "expressed his concurrence with the two letters." Memorandum for the Files, from Robert M. Knight, General Counsel, Department of the Treasury (Nov. 7, 1961). We have located no confirmation of this approval in our Office's files, but a letter sent to the Comptroller of the Currency in 1964 by Norbert Schlei, then the Assistant Attorney General for our Office, stated:

> I am aware of the case of your immediate predecessor in office, who resigned at the request of President Kennedy before completing the five-year term authorized by section 325 of the Revised Statutes, as amended (12 U.S.C. § 2). I agree with the conclusion reached by the General Counsel of the Treasury Department, and concurred in by the Chairman of the [FDIC], that a resignation under those circumstances marked the end of a full term for the purposes of the exception to the employment restriction in 12 U.S.C. § 1812 and left open to your predecessor the possibility of immediate employment with an insured bank.

Letter for the Comptroller of the Currency, from Norbert A. Schlei, Assistant Attorney General, Office of Legal Counsel at 1 (Sept. 2, 1964). Two years later, our Office reached the same conclusion again. Letter for Fred B. Smith, General Counsel, Department of the Treasury, from Frank Wozencraft, Assistant Attorney General, Office of Legal Counsel (Nov. 10, 1966). An internal memorandum prepared a few weeks earlier laid the groundwork for the letter. Memorandum for the Files, from Nathan Siegel, Office of Legal Counsel, *Re: Eligibility of a Comptroller of the Currency for Employment in an Insured Bank Under 12 U.S.C. § 1812* (Sept. 21, 1966) ("1966 Memorandum").

The rationale for this view of the statute, which is not an obvious interpretation of the language, was never explained at length, but it appears to have consisted of a two-step argument. First, a Comptroller of the Currency *removed* by the President has served a full term. He has served as long as the law—given the

President's action—would permit, *see id*. at 3-4; and application of the post-employment restriction, in those circumstances, would not serve the statute's purpose, which is to prevent an official from (intentionally) exploiting a short stay in office to make contacts that lead to private employment. *Id*. at 2. Second, "when the holder of the office responds to the President's request to resign it is in substance a forced separation from office" and so equivalent to a removal. *Id*. at 3.

These prior opinions, without more, might seem to settle the issue whether the Director of OTS, whose office (like that of the Comptroller of the Currency) entails service on the FDIC Board, will have served her full term when her resignation at the President's request becomes effective. In two respects, however, the situation here might differ from the one we previously considered.

First, under 12 U.S.C. § 2 (1994), the Comptroller of the Currency "shall hold his office for a term of five years unless sooner removed by the President, upon reasons to be communicated by him to the Senate." This provision could be read as expressly defining a term that ends either in five years or upon removal of the President. By contrast, the Director of OTS "shall be appointed for a term of 5 years." *Id*. § 1462a(c)(2). Because the language of this provision could not be said expressly to define a term that ends upon removal by the President, a Director of OTS who is removed or resigns at the President's request arguably would not have served a full term.

It is far from evident that our earlier opinions rested in any way on an argument that the statutory language defined the Comptroller of the Currency's term by reference to the President's power of removal. At any rate, drawing this distinction would lead to a serious anomaly. Of the members of the Board, only the Comptroller of the Currency serves under a statute that contains the "unless sooner removed by the President" language. Thus, if a distinction were made on the basis of this language, the distinction would give a special benefit to the Comptroller of the Currency that would be unavailable to the other members of the FDIC's Board: only the Comptroller of the Currency would be relieved of the two-year bar when the President removed him or he resigned at the President's request.

We would not infer that Congress intended such an anomaly. On the contrary, the legislative history suggests that the Comptroller of the Currency and the other members of the Board were to be subject to the same post-employment restrictions. Until 1950, when the Board consisted of the Comptroller of the Currency and two appointed members, the two-year bar was absolute as to the Comptroller of the Currency, and only the appointed members gained exemption from the bar by serving their full terms. *See* 12 U.S.C. § 264(b) (1946). In 1950, Congress repealed the absolute bar that had applied to the Comptroller of the Currency, "thereby placing him in *the same position* in that respect as the two appointive members of the Board." H.R. Rep. No. 81-2564, at 5 (1950) (emphasis added); *see also* 1966 Memorandum at 2-3 (citations omitted). But if the exception for officials who have served a "full term" is available to a Comptroller of the

Currency removed from office only because his term is "five years unless sooner removed," and if that exception is unavailable to the other members of the Board because the statutes applicable to them do not contain that language, the 1950 amendment, rather than placing the Comptroller of the Currency in the same position as the appointed members, would have put him in an appreciably better position.

Second, the Director of OTS's letter of resignation suggests, without actually asserting, that the Director of OTS might not serve at the pleasure of the President. *See* July 3, 2001 Letter at 2. Such an assertion would be in tension with the view that the President, by asking for the Director of OTS's resignation, had effectively removed her from office and that she thus had served the full term allowed by the law under the circumstances.

We do not endorse the view that tenure protection for the Director should be inferred under the statute here. The statute gives no express protection. Furthermore, as the Director of OTS observes, *see* July 24, 2001 Letter at 1, OTS is within the Treasury Department, and the Secretary of the Treasury has "general oversight" power over the Director. 12 U.S.C. § 1462a(b)(1). At any rate, it is sufficient for present purposes to note that the Director of OTS did not actually claim that the President would have lacked authority to remove her. Therefore, under the approach of our prior opinions and for purposes of the question here, her resignation "is in substance a forced separation from office." *See* 1966 Memorandum at 3.

We therefore do not believe that the present case should be distinguished from our earlier opinions. Because the Director of OTS resigned at the President's request, she has served a "full term" within the meaning of the statute as our Office has interpreted it, and she may claim the benefit of the exception to the two-year post-employment bar.

DANIEL L. KOFFSKY
*Acting Assistant Attorney General*
*Office of Legal Counsel*
